01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

PABLO JOSE MORALES,                     )
                                        )
        Petitioner,                     )    CASE NO. 2:07-cv-00826-RSL-JLW
                                        )
        v.                              )
                                        )
R. J. RUBIA, WARDEN,                    )    REPORT AND RECOMMENDATION
                                        )
        Respondent.                     )
_____ )

I.      SUMMARY

        Petitioner is currently incarcerated at Mule Creek State Prison, in Ione, California.  He

pleaded nolo contendere to one count of second degree murder in Los Angeles County

Superior Court on April 13, 1982.  He is currently serving a sentence of fifteen-years-to-life

with the possibility of parole and has filed an amended petition for writ of habeas corpus

under 28 U.S.C. § 2254 challenging his 2006 denial of parole by the Board of Parole Hearings

of the State of California (the "Board").[1]  (*See* Dockets 6 & 10.)  Petitioner contends his due

process rights were violated when the Board denied parole based upon false information

contained in an unsigned Probation Officer's Report; that the Board's failure to honor his plea

_____

        [1] The Board of Parole Hearings replaced the Board of Prison Terms, which was
abolished on July 1, 2005.  *See* California Penal Code § 5075(a).

REPORT AND RECOMMENDATION  -  1

0   agreement violated his due process rights; that his equal protection rights under the

02  Fourteenth Amendment were violated when the Board refused to release him pursuant to the

03  GPS tracking system used for sexually violent offenders; and that his sentence is "grossly

04  disproportionate" to his offense in violation of his Eighth Amendment right to be free from

05  cruel and unusual punishment.  The Court, having thoroughly reviewed the record and the

06  briefing of both parties, recommends the Court deny the amended petition and dismiss this

07  action with prejudice.

08          II.       STANDARD OF REVIEW

09          The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

10  amended petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521

11  U.S. 320, 326-27 (1997).  Because petitioner is in custody of the California Department of

12  Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

13  vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert.*

14  *denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas

15  petition by a state prisoner in custody pursuant to a state court judgment, even when the

16  petitioner is not challenging his underlying state court conviction.").  Under AEDPA, a

17  habeas petition may not be granted with respect to any claim adjudicated on the merits in state

18  court unless petitioner demonstrates that the highest state court decision rejecting his petition

19  was either "contrary to, or involved an unreasonable application of, clearly established

20  Federal law, as determined by the Supreme Court of the United States," or "was based on an

21  unreasonable determination of the facts in light of the evidence presented in the State court

22  proceeding."  28 U.S.C. § 2254(d)(1) and (2).

REPORT AND RECOMMENDATION  -  2

As a threshold matter, this Court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision.  To make this determination, the Court may only consider the holdings, as opposed to dicta, of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be [objectively] unreasonable."  *Id.* at 411.

REPORT AND RECOMMENDATION  -  3

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine whether the petitioner has met this burden, a federal habeas court normally looks to the last reasoned state court decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).  Where, as in this case, the state courts issue summary denials without explaining their reasons, *see infra*, this Court must conduct an independent review of the record to determine whether the state courts' decisions were contrary or involved an unreasonable application of Supreme Court holdings.  *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  Although our review of the record is conducted independently, we continue to show deference to the state court's ultimate decision.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## III.    PRIOR STATE COURT PROCEEDINGS

In his amended federal habeas corpus petition, petitioner presents the same four grounds for relief that he presented to the California Supreme Court.  (*See* Dkt. 6 & Dkt. 10, Exh. E.)  Respondent concedes that petitioner's plea agreement claim has been properly exhausted and timely filed, but fails to address in any way the remaining three grounds for relief. (*See* Dkt. 10 at 2.)  Respondent's failure to address all of the allegations in the amended petition appears to be an oversight and is in violation of Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires respondent to address all allegations presented in a habeas corpus petition.  In light of the already lengthy delay in this case, however, the Court has independently reviewed the record and determined

that petitioner properly presented all four claims to the state's highest court.  (*See id.*, Exh. E.)  *See* 28 U.S.C. § 2254(b)(3); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (holding that California law requires presentation of claims to the California Supreme Court through petition for discretionary review in order to exhaust state court remedies).  Accordingly, I recommend the Court find that petitioner has properly exhausted all four grounds for relief.

Once it has been determined that a petitioner's claims have been exhausted, this Court typically looks to the state court's orders upholding the Board's decision to determine whether they meet the deferential AEDPA standard.  *See Ylst*, 501 U.S. at 803-04.  In denying the petition, the Los Angeles County Superior Court issued a one-paragraph decision addressing petitioner's plea agreement claim.  (*See* Dkt. 10, Exh. D.)  Like respondent, it failed to address petitioner's three remaining claims.  (*See id.*)  As discussed *supra*, when a state court issues a decision on the merits but does not provide a reasoned decision, we review the record independently to determine whether that decision was objectively reasonable.  *See Delgado*, 223 F.3d at 982.  Accordingly, this Court must conduct an independent review of three of petitioner's four grounds for relief.

IV.     BACKGROUND

The Board's 2006 report summarized the facts of the crime as follows:

> ….the deceased['s] son, Dwight Washabaugh, resident of Colorado testified he last spoke with his mother by phone on June 27, 1980, at which time she was in her home in Soquel.  A

REPORT AND RECOMMENDATION  -  5

missing [person] report had been filed on the deceased on or about the end of July 1980.  An investigation was initiated by detectives from the Los Angeles Police Department, Robbery Homicide Division and the Santa Cruz County Sheriff's Department.  On July 7, 1980 a human hand was found by officers of the Los Angeles Police Department in the traffic lane on the northbound Hollywood freeway at Vermont.   On August 7, 1980 fingerprint identification disclosed that the human hand was that of Mrs. Washabaugh.  It was then learned that defendant Morales had obtained possession of the deceased's vehicle and used her credit card forging her name.  At the time of the arrest, the defendant was in possession of the deceased's car, purse, credit cards and her diamond rings, which lead [sic] to the conviction of Morales.  The victim had become interested in prison reform and started visiting prison inmates, including Morales,…whom she saw frequently while he was incarcerated at Soledad.  Then he was transferred to [a] Los Angeles area half way house on April 14, 1980 in anticipation of an upcoming parole, the deceased visited Los Angeles for one day on April 30, 1980 and was secretly married [to petitioner].

(Dkt. 10, Exh. C at 25-26.)

Petitioner pled nolo contendere to second degree murder on April 13, 1982, in Los Angeles County Superior Court.  (*See* Dkt. 17, Exh. F.)  He began serving his sentence of fifteen-years-to-life with the possibility of parole on July 13, 1982.  (*See* Dkt. 10, Exh. C at 1.) His minimum eligible parole date was set for August 2, 1990.  (*See id.*)  Petitioner has been incarcerated for approximately twenty-seven years for this offense.

The parole denial, which is the subject of the amended petition, followed a parole hearing held on January 20, 2006.  During the hearing, counsel for petitioner notified the Board that petitioner wished to make "two objections, a motion and offer evidence i[n] mitigation."  (*See id.* at 2.)  The issues raised at the Board hearing are the same issues presented in this petition.  (*See id.* at 2-11.)  The Board overruled petitioner's objections and

REPORT AND RECOMMENDATION  -  6

01  denied his motion and offer of evidence in mitigation.  (*See id.* at 11-12.)  After the Board's

02  ruling, petitioner excused himself from the hearing, as planned.  (*See id.* at 11.)  His counsel

03  was present for the remainder of the hearing.  (*See id.*)  While this was not petitioner's first

04  "subsequent parole consideration hearing," it is unclear from the record how many such

05  hearings have been held.   Regardless, it is safe to assume that this was not his first hearing

06  and that all prior applications have been denied.  Petitioner's next parole consideration

07  hearing is scheduled for 2010.  (*See* Dkt. 6, Memorandum in Support at 3.)

08          V.      FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

09          A.    *Due Process Right to be Released on Parole*

10      Before we consider petitioner's claims, we must first determine whether petitioner has

11  a constitutionally protected liberty interest in parole.  Under the Fifth and Fourteenth

12  Amendments to the United States Constitution, the government is prohibited from depriving

13  an inmate of life, liberty or property without the due process of law.  U.S. Const. amends. V,

14  XIV.  A prisoner's due process claim must be analyzed in two steps: the first asks whether the

15  state has interfered with a constitutionally protected liberty or property interest of the

16  prisoner, and the second asks whether the procedures accompanying that interference were

17  constitutionally sufficient.  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass*

18  *v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

19      The Supreme Court articulated the governing rule in the parole arena in *Greenholtz v.*

20  *Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369

21  (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly

22  established' framework of *Greenholtz* and *Allen*" to California's parole scheme).  The Court

in *Greenholtz* determined that although there is no constitutional right to be conditionally

released on parole, if a state's statutory scheme employs mandatory language that creates a

presumption that parole release will be granted if certain designated findings are made, the

statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7, 12; *Allen*,

482 U.S. at 377-78.

As discussed *infra*, California statutes and regulations afford a prisoner serving an

indeterminate life sentence an expectation of parole unless, in the judgment of the parole

authority, he "will pose an unreasonable risk of danger to society if released from prison."

Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's

parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*,

306 F.3d at 902.  To similar effect,  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held

that California Penal Code § 3041 vests all "prisoners whose sentences provide for the

possibility of parole with a constitutionally protected liberty interest in the receipt of a parole

release date, a liberty interest that is protected by the procedural safeguards of the Due

Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but

upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also*

*Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-

protected liberty interest, this Court must proceed to the second step in the procedural due

process analysis and determine whether the procedures accompanying that interference were

constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

board's decision deprives a prisoner of due process with respect to this interest if the board's

REPORT AND RECOMMENDATION  -  8

0  decision is not supported by 'some evidence in the record.'"  *Irons*, 505 F.3d at 851 (citing

02  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

03  applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

04  Court to determine "whether there is any evidence in the record that could support the

05  conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455-56.  Although *Hill*

06  involved the accumulation of good time credits rather than release on parole, later cases have

07  held that the same constitutional principles apply in the parole context because both situations

08  directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

09  1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

10  Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

11  915; *McQuillion*, 306 F.3d at 904.

12      "The fundamental fairness guaranteed by the Due Process Clause does not require

13  courts to set aside decisions of prison administrators that have some basis in fact," however.

14  *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

15  the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

16  455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

17  *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

18  habeas review when it upheld the finding of the prison administrators despite the Court's

19  characterization of the supporting evidence as "meager."  *See id.* at 457.

20      B.    *California's Statutory and Regulatory Scheme*

21      In order to determine whether "some evidence" supported the Board's decision with

22  respect to petitioner, this Court must consider the California statutes and regulations that

REPORT AND RECOMMENDATION  -  9

govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

Board is authorized to set release dates and grant parole for inmates with indeterminate

sentences.  *See* Cal. Penal Code § 3040 and 5075, *et seq.*  Section 3041(a) requires the Board

to meet with each inmate one year before the expiration of his minimum sentence and

normally set a release date in a manner that will provide uniform terms for offenses of similar

gravity and magnitude with respect to their threat to the public, as well as comply with

applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

date "unless it determines that the gravity of current convicted offense or offenses, or the

timing and gravity of current or past convicted offense or offenses, is such that consideration

of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant

to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

dates" which take into account the number of victims of the offense as well as other factors in

mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

§ 2402, *et seq*.

Accordingly, the Board is guided by the following regulations in making a

determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life
> prisoner is suitable for release on parole. Regardless of the
> length of time served, a life prisoner shall be found unsuitable
> for and denied parole if in the judgment of the panel the
> prisoner will pose an unreasonable risk of danger to society if
> released from prison.
>
> (b) Information Considered. All relevant, reliable information
> available to the panel shall be considered in determining
> suitability for parole. Such information shall include the
> circumstances of the prisoner's social history; past and present

REPORT AND RECOMMENDATION - 10

mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole, although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  *Id*. at 1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

REPORT AND RECOMMENDATION  -  11

California courts have continually noted, the Board's discretion in parole release matters is very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at 1205-06.

C. *Summary of Governing Principles*

By virtue of California law, petitioner has a constitutional liberty interest in release on parole.  The parole authorities may decline to set a parole date only upon a finding that petitioner's release would present an unreasonable present risk of danger to society if he is released from prison.  Where the parole authorities deny release, based upon an adverse finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief if there is "some evidence" in the record to support the parole authority's finding of present dangerousness.  The penal code, corresponding regulations, and California law clearly support the foregoing interpretation.

VI.   PARTIES' CONTENTIONS

Petitioner's first argument is that his due process rights were violated when the Board relied upon false information contained in the unsigned Probation Officer's Report and fingerprint card.  (*See* Dkt. 6, Memorandum in Support at 2-4.)  He requests that such information be expunged from his prison file and that he be granted a new parole hearing absent such false information.  (*See id.* at 3-4.)  Petitioner also contends that his due process rights were violated when the Board rendered its decision contrary to the terms of his plea agreement, which he claims promised him a determinate ten-year sentence.  (*See id.* at 4-7.)

0  In addition, he claims that his Fourteenth Amendment right to equal protection was violated

02  when the Board refused to release him pursuant to the GPS tracking system used for sexually

03  violent offenders.   (*See id.* at 7-8.)  Finally, he contends that the Board's finding violated his

04  Eighth Amendment right to be free from cruel and unusual punishment by imposing a

05  "sentence" that is "grossly disproportionate" to his crime.  (*See id.* at 10.)

06      As discussed, *supra*, respondent only addresses petitioner's plea agreement claim,

07  stating that petitioner's rights were not violated by the Board's 2006 decision, and that the

08  Los Angeles County Superior Court's Order upholding the Board's parole denial was not an

09  unreasonable application of clearly established federal law.  (*See* Dkt. 10 at 4-5 & Dkt. 17.)

10      VII.    ANALYSIS OF RECORD IN THIS CASE

11          A.    *Due Process Right to Expunge False Information from Prison File*

12      Petitioner claims that his due process rights were violated when the Board denied him

13  parole based upon an unsigned 1982 Probation Officer's Report allegedly containing false

14  information and an unsigned fingerprint card.  He requests that all erroneous information be

15  expunged from his central prison file and that he be granted a new parole hearing.  Because

16  the relief petitioner seeks – a new parole hearing absent consideration of allegedly false

17  information – does not directly challenge the fact or duration of his confinement, the Court's

18  next step is typically to determine whether habeas corpus jurisdiction is lacking.  *See Docken*

19  *v. Chase*, 393 F.3d 1024, 1028 (9th Cir. 2004) (discussing how U.S. Supreme Court and Ninth

20  Circuit precedent have handled the "interplay between § 1983 and habeas in the parole

21  //

22  //

REPORT AND RECOMMENDATION  -  13

context… [specifically] with regard to the reach of habeas jurisdiction over parole-related prisoner suits").[2]

In cases in which a due process right to an accurate prison record is alleged, however, it is advisable to restrain from delving into the distinction between habeas corpus and civil rights jurisdiction and to, instead, focus first upon whether there is in fact a constitutional due process right at stake. *See Bennett v. Curry*, 2008 WL 2563223, *3-4 (E.D. Cal. 2008) (unpublished) (discussing the interaction between habeas and civil rights actions and concluding that *whether* there is an actual constitutional violation takes precedent).

Prior to 1995, it was fairly well-established that a prisoner had a limited due process right to have false information expunged from a prison file, (1) if he could show that the erroneous information was in his file, (2) that such information was actually false, and (3) that

//

//

//

---

[2] The appellate and district courts in this Circuit continue to grapple with the jurisdictional distinction. *Compare Lettier v. Ayers*, 299 Fed. Appx. 717, 718 (9th Cir. 2008) (unpublished) (affirming dismissal of petition because prison officials' retention of a report allegedly containing false information was "too speculative to establish habeas corpus jurisdiction"), *and Santibanez v. Marshall*, 2009 WL 1873044 (C.D. Cal. June 30, 2009) (unpublished) (holding prisoner's speculation that negative information regarding administrative discipline contained in his prison file would affect his parole hearing and therefore the length of his confinement was too speculative to confer habeas jurisdiction), *with Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (holding "[h]abeas corpus jurisdiction exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole"); *Woods v. Palmer*, 2009 WL 1684502 (E.D. Cal. June 9, 2009) (finding action to expunge prison file containing a false psychiatric report and to have a new parole hearing was not cognizable under §1983 and must be brought under § 2254), *and Noor v. Martell*, 2009 WL 1942895, *4 (E.D. Cal. July 2, 2009) (holding "because petitioner has submitted sufficient evidence to show that he is likely to suffer collateral consequences from the challenged disciplinary action, habeas jurisdiction exists").

REPORT AND RECOMMENDATION  -  14

the decision maker was likely to rely upon it "to a constitutionally significant degree." *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925 (1979).[3]

In 1995, the United States Supreme Court decided *Sandin v. Conner*, based upon on a somewhat similar set of facts – a prisoner serving a indeterminate sentence sought removal of a misconduct charge in his disciplinary record on the grounds that his due process rights were violated in the disciplinary hearing.  515 U.S. 472, 474-77 (1995).  The Court in *Sandin* held that a liberty interest implicating the Due Process Clause only exists where the prisoner can demonstrate that the State action at issue would "inevitably affect the duration of his sentence."  *Id.* at 487.   Because "[t]he chance that a finding of misconduct will alter the balance [at his parole hearing] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause," the Court found that the prisoner did not have a protected liberty interest.  *Id.*  Accordingly, the Court in *Sandin* heightened the requirement of proof articulated in *Paine* (i.e., that the decision maker was likely to rely upon it "to a constitutionally significant degree").  The applicable standard in this case is therefore whether "the false information will inevitably lengthen the duration of the inmate's incarceration." *Rio v. Schwarzenegger*, 2009 WL 1657438 (C.D. Cal. June 10, 2009) (discussing the existence of a liberty interest implicating the Due Process Clause pre- and post-*Sandin*).

Petitioner in this case cannot make the requisite showing under *Sandin*, as he is unable to demonstrate that the false information would "inevitably lengthen" the duration of his

---

[3] There is a long line of unpublished circuit and district court authority relying on *Paine*. Unfortunately, the Ninth Circuit Court of Appeals does not appear to have published an opinion directly addressing whether there is an independent due process right to have accurate information in a prisoner's file, pre- or post-*Sandin*.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (holding that because the State of Washington had a state-created right to an accurate prison record, it need not reach whether an independent due process right existed).

confinement.  The Board was apprised of petitioner's concerns and determined that in light of petitioner's lack of cooperation with the probation officer's interview process the officer did the best she could do by relying upon other investigative resources.  (*See* Dkt. 10, Exh. C at 12.)  In fact, the probation officer's report is transparent in this regard – it makes clear that petitioner refused to discuss his case or to provide a written statement, and specifically identifies the alternative resources upon which she relied.[4]  (*See id.*, Exh. B at 12.)  This approach was in compliance with Probation Department policy.  (*See* Dkt. 6, Exh. B.)  Accordingly, the Board read the report with petitioner's concerns in mind and considered all reliably documented information, as permitted by 15 CCR § 2402(b).

In addition, and possibly because of this, the Board did not rely solely upon either of petitioner's murder convictions in rendering its decision.  Instead, it focused upon other unsuitability factors, such as petitioner's lack of adequate parole plans, failure to participate in education or vocational training, and psychological report indicating "an extreme antisocial and dysfunctional orientation … to life."  (*See* Dkt. 10, Exh. C at 23-24.)  These factors were independent of the information contained in the Probation Officer's Report or the fingerprint card.

Because the Board was aware of petitioner's allegations, was able to evaluate the credibility of the information before it, and relied upon multiple other factors in rendering its

---

[4] This Court also recognizes that petitioner has consistently been afforded an opportunity to correct the record, both during the Probation Officer's interview process and during his subsequent parole suitability hearings.  While it is his right not to discuss his case, he has chosen a difficult path.  He alleges that portions of the report are incorrect, he will not correct the inaccuracies, and he seeks to have the entire report removed from his file.

decision, the likelihood that petitioner would have been found suitable for parole if the

allegedly false information was removed from his file is "simply too attenuated to invoke the

procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487.  Without a due

process right, petitioner cannot state a cognizable due process claim, regardless of whether the

claim was presented in a habeas corpus petition or civil rights complaint.  *See Bennett*, 2008

WL 2563223 at *5-6.  I therefore recommend that this claim be denied.

        B.     *Violation of the Plea Agreement*

        Petitioner's second ground for relief alleges that the Board's denial of parole failed to

comply with the negotiated terms of his plea agreement, thereby violating his federal

constitutional due process rights.  (*See* Dkt. 6, Memorandum in Support at 4 -7.)  Petitioner

maintains that under the plea agreement, he would be paroled after serving "about ten-years"

as long as he remained discipline-free during that time.  (*See id.* at 4-5.)  Petitioner has now

served more than twenty-seven years in prison and has remained discipline-free throughout

his incarceration.  (*See id.* at 5.)  He claims that his attorney, the prosecutor, and the court

agreed to the above terms and that this Court should direct the Board to grant him parole in

compliance with this agreement.  In support of his contention, petitioner points the Court to

the transcript of the plea colloquy.  Petitioner provided the Court with a portion of the plea

colloquy, apparently typed by petitioner, or by someone assisting him with his petition.  (*Id.* at

6.)  He argues that the transcript together with the holding in *Brown v. Poole*, warrant his

release on parole.  337 F.3d 1155 (9th Cir. 2003) (holding that a prosecutor's oral promise

during the plea colloquy is part of the contract between the defendant and the State and

entitles a defendant to specific performance of the promise).

REPORT AND RECOMMENDATION  -  17

In the answer, respondent summarily dismissed petitioner's claim, citing *Buckley v. Terhune*, a case that was overruled by an *en banc* panel of the Ninth Circuit Court of Appeals more than a year before the answer was filed.  *See Buckley v. Terhune*, 397 F.3d 1149 (9th Cir. 2005), *rev'd by*, 441 F.3d 688 (9th Cir. 2006) (*en banc*).  Respondent failed to address petitioner's argument under *Brown*, and did not provide the Court with any transcript or written documentation of the plea agreement or plea colloquy, or indicate what portions of such transcript(s) were available, as required by Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts.  Accordingly, supplemental briefing was ordered.  (*See* Dkt 16.)  Both parties have now filed supplemental briefs, and respondent has provided the Court with a copy of plea colloquy transcript.  (*See* Dkt. 17, Exh. F & Dkt. 18.)

"Plea agreements are contractual in nature and are measured by contract law standards." *Brown*, 337 F.3d at 1159 (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993)).  Although a criminal defendant has a due process right to enforce the terms of a plea agreement, *see Santobello v. New York*, 404 U.S. 257, 261-62 (1971), there is no evidence that petitioner's subjective expectations about how parole would be decided were part of the plea agreement.  Petitioner has not pointed to any language in any plea agreement that shows that any particular term in his plea agreement has been breached.  As stated above, petitioner claims that his attorney, the prosecutor, and the court agreed that he would be paroled after "about ten years" if he did not receive any disciplinary violations.  Petitioner has presented no document or record citation to support that statement, however.

There is no language in the transcript of the plea colloquy that states petitioner would be paroled so long as he was discipline-free and there is no basis in the record to support a

reasonable inference that his plea agreement carried a guarantee of release. Although there is

a discussion on the record regarding the minimum amount of time he "could" serve, this does

not rise to the level of guarantee. In *Brown*, the prosecutor stated:

> [n]ow, if you behave yourself at the state prison, as most people do, and I am inclined to believe that you will, *you are going to get out* in half the time. *You get half of that* 15 years off, or half of that 17 years off with the imposition of the extra two years, for good time/work-time credits. That's up to you.

337 F.3d at 1157-58 (emphasis added).

Thus, the prosecutor in Brown promised the defendant that he would "get out in half

the time" if he behaved himself in prison. *Id.* at 1158. Unlike *Brown*, the prosecutor in this

case merely stated that petitioner "*could* be released quite a bit earlier than 15-years," and that

"the minimum *could* be as little as ten years," but that "the maximum that [he] *could* serve

would be the rest of your life in state prison." (Dkt. 17, Exh. F at 37, emphasis added.) He

went on to say that "[t]his would be a decision reached by the authorities at the state prison.

Do you understand that?" (*Id.*) To which petitioner responded, "I understand." (*Id.*) It is

clear that the prosecutor's statements were simply meant to inform petitioner of the possibility

of parole, but were not meant to guarantee it. Petitioner's traverse appears to admit as much.

(*See* Dkt. 18 at 3, stating "[petitioner] believed that the District Attorney's words encouraged

possible early parole.") His citation in his traverse to *INS v. St. Cyr* does not resurrect this

claim. *See INS v. St. Cyr*, 533 U.S. 289 (2001) (holding impermissible the retroactive

application of AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act

of 1996, Pub. L. No. 104-208, 100 Stat. 3009, to aliens who pled guilty before the effective

dates of the Acts and would have been eligible for § 212(c) relief on the date of their plea).

0        To the extent petitioner believed this language guaranteed him actual release on

02   parole, however, he has failed to demonstrate that such a term existed in his plea agreement.

03   The possibility of parole is not equivalent to a finding of suitability, and under state law (as it

04   existed when he was sentenced and as it exists now) an inmate must be found suitable before

05   his release date is set.  Petitioner's sentence was based on a plea agreement of fifteen-years-

06   to-life.  Petitioner has received the parole considerations to which he was entitled under that

07   agreement and sentence.

08        Because the language in the transcript does not reflect a promise that petitioner would

09   be paroled at any time short of the maximum term of life, petitioner has failed to satisfy his

10   burden of showing he is entitled to the issuance of the writ.  *See Silva v. Woodford*, 279 F.3d

11   825, 835 (9th Cir. 2002) (petitioner's burden to show he is in custody in violation of the

12   constitution).  The fact that the portion of the sentencing transcript petitioner transcribes

13   includes a passage indicating that the sentencing judge sentenced him "for 15 - -" and does

14   not state "to life", does not alter this conclusion.  The plea colloquy was clear.  Accordingly,

15   the Court finds "some evidence" in the record to support the state court's decision and finds

16   no constitutional violation occurred.

17        C.    *Violation of the Equal Protection Clause*

18        Petitioner also contends that his right to equal protection under the Fourteenth

19   Amendment was violated when the Board found him unsuitable for parole.  (*See* Dkt. 6,

20   Memorandum in Support at 7-8.)  Petitioner contends that a new California Penal Code

21   section authorizing the Board to condition parole upon an inmate's agreement to be monitored

22   electronically should have been considered by the Board in his case.  More specifically,

REPORT AND RECOMMENDATION  -  20

0   petitioner contends that because violent sex offenders are offered this as a condition of parole,

02   the same condition should be available to him.  The amended petition offers little analysis in

03   support of his claim, and respondent fails to address this issue on the merits.  (*See id.* &

04   Dkt. 10.)  The Board is required to review the specific facts of each case and to make an

05   individualized determination as to whether that prisoner is suitable for parole.  *See In re*

06   *Lawrence*, 44 Cal.4th at 1221.  Even if this Court were to assume that all sexually violent

07   offenders were similarly situated to all violent offenders and to petitioner, the Board made the

08   requisite individualized determination and found petitioner unsuitable for parole based upon

09   all available conditions of release.  The Court therefore finds "some evidence" in the record to

10   support the Board's decision not to parole petitioner subject to electronic monitoring and finds

11   no constitutional violation occurred.

12        D.     *Violation of the Eighth Amendment*

13        Petitioner argues that the Board's decision to deny him a parole release date

14   constitutes cruel and unusual punishment in violation of the Eighth Amendment.  (*See* Dkt. 6,

15   Memorandum in Support at 8.)  The United States Supreme Court has held that a life sentence

16   is constitutional, even for a non-violent property crime.  *See Rummel v. Estelle*, 445 U.S. 263,

17   274 (1980) (holding that "the length of the sentence actually imposed is purely a matter of

18   legislative prerogative"); *Harmelin v. Michigan*, 501 U.S. 957, 962-64 (1990).  Accordingly, a

19   life sentence for a murder such as that committed by petitioner does not constitute cruel and

20   unusual punishment.  *See Banks v. Kramer*, 2009 WL 256449 (E.D. Cal. 2009) (unpublished)

21   (holding that a Board's refusal to release a prisoner who was sentenced to sixteen years-to-life

22

REPORT AND RECOMMENDATION  -  21

0    for murder does not constitute cruel and unusual punishment). Thus, the Board's decision did

02   not violate petitioner's Eighth Amendment right.

03         VIII.   CONCLUSION

04         Given the totality of the Board's findings, there is "some evidence" in the record that

05   petitioner's release date as of the Board's 2006 decision would have posed an unreasonable

06   risk to public safety. The Los Angeles County Superior Court's order upholding the Board's

07   decision was therefore not contrary to, or an unreasonable application of, clearly established

08   federal law, or based on an unreasonable determination of facts. Because the Board and the

09   state courts' ultimate decisions were supported by "some evidence," there is no need to reach

10   respondent's argument that another standard applies. Accordingly, I recommend the Court

11   find that petitioner's constitutional rights were not violated, that the amended petition be

12   denied and that this action be dismissed with prejudice.

13         This Report and Recommendation is submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days

15   after being served with this Report and Recommendation, any party may file written

16   objections with this Court and serve a copy on all parties. Such a document should be

17   captioned "Objections to Magistrate Judge's Report and Recommendation." Failure to file

18   objections within the specified time may waive the right to appeal the District Court's Order.

19   *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). A proposed order accompanies this

20   Report and Recommendation.

21         DATED this 10th day of August, 2009.

22

                               JOHN L. WEINBERG
                               United States Magistrate Judge

REPORT AND RECOMMENDATION - 22